UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------

MONICA ARROYO-HORNE,

                              Plaintiff,                                    NOT FOR PUBLICATION

                    v.                                    **<u>MEMORANDUM & ORDER</u>**
                                                          16-CV-03857 (MKB)
NEW YORK CITY POLICE DEPARTMENT,
ROBIN GOODMAN, NORMAN GRANDSTAFF,
MONIQUE MORGAN, DIANE HARNACH,
DAVE HALLOWAY, AL JERNIGAN and JEAN
JASON,

                              Defendants.

--------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiff Monica Arroyo-Horne, proceeding *pro se*, commenced the above-captioned

action on July 7, 2016, against Defendants the New York City Police Department (the

"NYPD"),[1] and individual defendants Robin Goodman, Norman Grandstaff, Monique Morgan,

Diane Harnach, Dave Holloway, Al Jernigan and Jean Jason (the "Individual Defendants").

---

        [1] Plaintiff was previously instructed by the Court that she cannot sue the NYPD but
instead must name the City of New York as the defendant. (July 26, 2016 Order,1 n.1, Docket
Entry No. 4.) Section 396 of the New York City Charter provides that "[a]ll actions and
proceedings for the recovery of penalties for the violation of any law shall be brought in the
name of the City of New York and not in that of any agency, except where otherwise provided
by law." N.Y. City Charter, chap. 17 § 396. This provision "has been construed to mean that
New York City departments, as distinct from the City itself, lack the capacity to be sued."
*Ximines v. George Wingate High Sch.*, 516 F.3d 156, 159–60 (2d Cir. 2008) (per curiam); *see
also Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("[T]he NYPD is a non-
suable agency of the City."); *Morris v. N.Y.C. Police Dep 't*, 59 F. App'x 421, 422 (2d Cir. 2003)
(affirming dismissal of claims asserted against the NYPD due to non-suable-entity status).
Plaintiff is directed to name the City of New York in any amended complaint if she intends to
pursue a claim against the NYPD.

(Compl. 2, 8–9, Docket Entry No. 1.)[2] Plaintiff asserts claims of discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), alleging that Defendants unfairly evaluated her and increased her workload, changed her schedule to a less convenient shift, denied her open positions and committed other harassing conduct. (*Id.* at 5, 10–15.) Plaintiff seeks damages. (*Id.* at 6.) Plaintiff has also moved, for the second time, to proceed *in forma pauperis*.[3] (Pl. Mot. for Leave to Proceed *in forma pauperis* ("Pl. IFP Mot."), Docket Entry No. 5.) The Court grants Plaintiff's application pursuant to 28 U.S.C. § 1915(a) for the limited purpose of this Memorandum and Order.[4]

For the reasons set forth below, the Court dismisses the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff is granted leave to file an amended complaint within thirty (30) days of the date of this Memorandum and Order.

## I. Background

The following facts are taken from the Complaint and are accepted as true. Plaintiff is employed by the NYPD as a police administrative aide in the 69th precinct. (Compl. 3, 5, 10.) Plaintiff indicates that she was discriminated against on the basis of her race, color and national origin without providing details as to the protected classes to which she belongs. (*Id.* at 5.) Specifically, Plaintiff alleges that she was discriminated against from May to June of 2014 and

---

[2] Because the Complaint is not consecutively paginated in full, the Court's citations refer to the page numbers assigned by the electronic document filing system.

[3] Plaintiff's initial request to proceed *in forma pauperis* was denied by an order of the Court dated July 26, 2016. (Docket Entry No. 4.)

[4] Although Plaintiff claims an annual salary of $41,463.84, (Pl. IFP Mot. 1, 5), she states that her gross monthly income is $1,912.00, (Compl. 2), which would result in an annual salary of approximately half of what Plaintiff alleges.

January to July of 2016 as well as during the month of February of 2015.[5]  Plaintiff asserts that the discriminatory treatment is ongoing and that she remains employed by the NYPD.  (*Id.*)  Plaintiff alleges that at least for certain periods, Goodman, Jernigan and Jason held direct supervisory roles over her while the remaining Individual Defendants, with the exception of Grandstaff and Holloway,[6] held positions as police administrative aides.  (*Id.* at 3, 8–9.)

Plaintiff alleges that a variety of actions taken against her were discriminatory and were taken in retaliation for her previously filed lawsuit in December of 2007 against the NYPD and certain individuals.[7]  (*Id.* at 15.)  Plaintiff alleges that Morgan, under the guidance of Goodman, violated her Family and Medical Leave Act (the "FMLA")[8] "responsibility [] to pay or deduct time only," by questioning Plaintiff about Plaintiff's February 21, 2016 "change of tour."  (*Id.* at 12.)  Separately, Plaintiff alleges that Jernigan and Goodman discriminated against her by issuing work evaluations of Plaintiff indicating that she only "meet[s] standards," even though she "trained most of the civilians who arrived at the 69th precinct," (*id.* at 10), and Jason discriminated against Plaintiff in March of 2016 by issuing a "Command Discipline . . . stating [Plaintiff] failed to submit a complaint report," (*id.* at 13).

---

[5]  Plaintiff also asserts that "[d]uring my transfer to the 69th pct, October 2009, I have underwent continued harassment, discrimination and retaliation from supervisors [sic]."  (*Id.* at 5.)

[6] Plaintiff alleges that Grandstaff is Deputy Inspector of the 69th precinct and Holloway is a retired administrative lieutenant.  (*Id.* at 8–9.)  Plaintiff does not allege any misconduct by Grandstaff and Holloway in the narrative included in the Complaint.

[7]  On March 9, 2011, Judge Raymond Dearie dismissed the lawsuit in its entirety on a motion for summary judgment.  *See Arroyo-Horne v. City of New York*, No. 07-CV-5213, 2011 WL 864682 (E.D.N.Y. Mar. 9, 2011).

[8]  Although Plaintiff references a violation of an "FLMA" claim and does not expressly indicate that she is bringing an FMLA claim, but instead lists the conduct along with her Title VII claims, the Court nevertheless construes the allegations as asserting an FMLA claim.

On separate occasions, Goodman denied Plaintiff "open positions" — one in the domestic violence office and another in the administration office — "that [Plaintiff] applied for and these positions were given to other individuals that held the same title as [Plaintiff]." (*Id*. at 5, 10.) Plaintiff alleges the domestic violence office position "was given to PAA Huang, Xiao, Hong [who] was unable to complete her task in that office and was later removed from domestic violence" and that she was "offered" the administration office position but was denied the position "without reason." (*Id*. 10.)

Plaintiff also alleges that Goodman and Jones altered her work schedule and unfairly assigned her work duties as compared to other police administrative aides. (*Id*. at 11, 13–14.) Plaintiff alleges that Goodman "was aware of [Plaintiff's] hardship" as the "caretaker for [her] parent who suffers from Altzheimer's," but Goodman nevertheless "changed [Plaintiff's] schedule . . . from 4x12 to 6:30 a.m. to 2:00 p.m." in order "to resolve a[n] issue between [police administrative aide] Monique Morgan and [Plaintiff]." (*Id*. 11.) Plaintiff alleges two instances where work was unfairly assigned to her. Plaintiff alleges that despite Goodman's awareness of Morgan's "work ethics," on one occasion, Goodman allowed "the newly hired [Morgan] to continue to socialize around the command leaving the work load on [Plaintiff]." (*Id*.) On another occasion, Plaintiff was asked to do "work that [could] be handled often by the next tour of PAA's" which was discrimination "towards [Plaintiff] and [her] coworker who worked day tours." (*Id*. at 13–14.)

Finally, Plaintiff alleges that Harnach unfairly discriminated against Plaintiff by inciting an "unnecessary argument," which Plaintiff alleges "came from [police administrative aid] Morgan" with regard to a dispute over a radio, (*id*. at 12–13), and Jones unfairly discriminated against Plaintiff on July 7, 2016 by taking "a desk fan from the front desk [Plaintiff] was

assigned to," (*id*. at 14–15).

To the best of Plaintiff's recollection, in January of 2016, she filed a charge with the Equal Employment Opportunity Commission ("EEOC") regarding the NYPD's alleged discriminatory conduct (the "EEOC Charge"). (*Id*. at 6.) The EEOC issued a notice of right-to-sue on April 8, 2016, which Plaintiff received on July 1, 2016.[9] (*Id*.)

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Concord Assoc's, L.P. v. Entm't Prop. Trust*, 817 F.3d 46, 52 (2d Cir. 2016) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this

---

[9] The Court reviews the EEOC notice of right-to-sue as a document attached to the Complaint. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (explaining that in considering the sufficiency of pleadings, a court's review is limited to the four corners of the complaint, but it may review, among other things, documents attached to the complaint).

principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally"). Nevertheless, the Court is required to dismiss *sua sponte* an *in forma pauperis* action if the Court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

### b. FMLA claim

Plaintiff alleges that Morgan, influenced by her friendship with Goodman, violated the FMLA by failing to fulfill her "responsibility [] to pay or deduct time only" because she "question[ed]" Plaintiff about her "change of tour" on February 21, 2016. (Compl. 12.) According to Plaintiff, Morgan "continued to harass" Plaintiff even after Plaintiff raised the situation with a supervisor, principal administrative aide Benton, who attempted to resolve the dispute. (*Id*.)

"The FMLA gives eligible employees an 'entitlement' to twelve weeks per year of unpaid leave '[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Sista v. CDC Ixis N. Am., Inc*., 445 F.3d 161, 174 (2d Cir. 2006) (quoting 29 U.S.C. § 2612(a)(1)(D)). It "'creates a private right of action to seek both equitable relief and money damages against any employer . . .' should that employer

'interfere with, restrain, or deny the exercise of' FMLA rights.'" *Id.* (quoting *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 724–25 (2003)). "The Second Circuit recognizes distinct claims of interference and retaliation under the FMLA." *Sista*, 445 F.3d at 175 (discussing this split approach to FMLA claims). An employee is eligible for FMLA benefits once she has been employed for at least twelve months, and has worked at least 1250 hours in the previous twelve– month period. 29 U.S.C § 2611(2)(A); *Porter v. Donahoe*, 484 F. App'x 589, 590 (2d Cir. 2012); *Kosakow v. New Rochelle Radiology Assocs., P.C.,* 274 F.3d 706, 715 (2d Cir. 2001). "[E]ligibility is a threshold issue which has to be proved by [the] plaintiff in order for him to be entitled to relief." *Bulmer v. Yellow Freight Sys., Inc*., 213 F.3d 625, 625 (2d Cir. 2000); *see also Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012); *Diby v. Kepco Inc*., No. 16-CV-583, 2016 WL 5879595, at *3 (E.D.N.Y. Oct. 7, 2016) (dismissing FMLA interference claims *sua sponte* for failure to allege eligibility requirements). "[S]imply alleging that the employee was employed full-time, is not enough to establish the 1,250 hour requirement under the FMLA." *Bakeer v. Nippon Cargo Airlines, Co., Ltd.*, No. 09-CV-3374, 2011 WL 3625103, at *40 (E.D.N.Y.) (citation and internal quotation marks omitted), *report and recommendation adopted*, No. 09-CV-3374, 2011 WL 3625083 (E.D.N.Y. Aug. 12, 2011).

Here, Plaintiff fails to allege the facts necessary to establish that she is eligible for FMLA. Plaintiff does not even allege that she was employed full-time by the NYPD.[10] *See*

---

[10] Plaintiff attaches to her second *in forma pauperis* motion, a form sent to the NYPD by the New York City Housing Authority ("NYCHA") that includes income and employment information Plaintiff provided to NYCHA for the final two quarters of 2015 and the first two quarters of 2016. (Pl. IFP Mot. 5.) According to that form, Plaintiff has been employed by the NYPD since June 29, 1998, and her employment has been "active as of" March 12, 2000. (Pl. IFP Mot. 5.) The form indicates that Plaintiff works thirty-five hours per week. (Pl. IFP Mot. 5.) Although a court is normally confined to consideration of the four corners of the complaint and any documents attached or incorporated therein, in the case of a *pro se* litigant, a court may

*Kosakow,* 274 F.3d at 715.  Because Plaintiff has not established eligibility for the FMLA, she cannot assert an FMLA claim and thus, her FMLA claim is dismissed.[11]  Should Plaintiff wish to pursue her FMLA claim, she is directed to file an amended complaint that sets forth facts sufficient to state an FMLA claim.

### c.  **Employment discrimination**

In analyzing whether a plaintiff has sufficiently alleged an employment discrimination claim, the Court must consider the pleading standard discussed above and the three-stage, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Littlejohn v. City of New York*, 795 F.3d 297, 307–08 (2d Cir. 2015) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)) (discussing burden-shifting); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (citing *Texas Dep't of Cty. Affairs v. Burdine*, 450 U.S. 248, 253–55 (1981)).  Under that framework, a plaintiff must first establish a prima facie case of discrimination.  *St. Mary's Honor Ctr.*, 509 U.S. at 506; *see*

---

look to other court filings by the *pro se* litigant.  *See Lopez v. Cipolini*, 136 F. Supp. 3d 570, 579 (S.D.N.Y. 2015) (collecting cases).  However, even affording Plaintiff that additional latitude, the letter attached to Plaintiff's *in forma pauperis* motion is not sufficient to establish FMLA eligibility.  At most, the letter suggests that Plaintiff generally works thirty-five hours a week and was "active[ly]" employed since March 12, 2000, but it does not provide enough information from which the Court can conclude that Plaintiff worked 1250 hours in the twelve months leading up to February 21, 2015, the only date Plaintiff provides in relation to her FMLA claim.  *See Smith v. Westchester Cty.*, 769 F. Supp. 2d 448, 465 (S.D.N.Y. 2011) (holding that even where the plaintiff alleged that he worked 1250 hours in a twelve-month period, the plaintiff "must plead that he had worked the required number of hours in the twelve months preceding the dates for which he requested FMLA leave").

[11]  If Plaintiff brings an FMLA claim in an amended complaint, she must plead specific facts relating to Morgan's and Goodman's power over Plaintiff in order to plead a claim for an FMLA violation against Morgan and Goodman as individuals.  *See* 29 U.S.C. § 2611(4)(A)(ii)(I) and 29 C.F.R. § 825.104(d) (an individual may be held liable under the FMLA only if she is an "employer," which is defined as encompassing "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer").

*also Campbell v. N.Y.C. Transit Auth.*, --- F. App'x ---, ---, 2016 WL 6069229, at *1 (2d Cir. Oct. 17, 2016); *Kirkland v. Cablevision Sys.*, 760 F. 3d 223, 225 (2d Cir. 2014); *Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 F. App'x 9, 11 (2d Cir. 2013). A plaintiff's burden at this stage is "minimal." *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 506). If a plaintiff meets her burden at this stage, a "temporary presumption" of discrimination arises, and the burden shifts to the defendant-employer to articulate a legitimate, nondiscriminatory reason for the challenged conduct. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (quoting *Littlejohn*, 795 F.3d at 307, 311). If the defendant-employer articulates such a reason, the burden shifts back to the plaintiff-employee to show that the defendant-employer's reason was merely pretext. *Id.* at 83.

At the pleading stage, a plaintiff does not need to prove discrimination, or even allege facts establishing every element of the *McDonnell Douglas* prima facie case, but the facts alleged must give "plausible support to the reduced requirements" of the prima facie case. *Littlejohn*, 795 F.3d at 311; *see Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016) (discussing *McDonnell Douglas* burden at the pleading stage in the context of Title VII cases); *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 767 (2d Cir. 2015); *Vega*, 801 F.3d at 84; *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006) ("[T]he requirements for establishing a prima facie case under *McDonnell Douglas* [do not] apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." (second alteration in original) (quoting *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002))). Thus, a plaintiff need only plead facts sufficient to give "plausible support" to the plaintiff's "minimal" initial burden, which is governed by the statute under which she brings her claims. *Vega*, 801 F.3d at 84 (quoting *Littlejohn*, 795 F.3d at 307, 312); *see also Doe*, 831 F.3d at 56.

### i.  Title VII

#### 1.  Title VII claims against the Individual Defendants

Plaintiff asserts discrimination and retaliation claims pursuant to Title VII against the Individual Defendants.  (Compl. 2–3, 8–9.)  However, individuals cannot be held liable pursuant to Title VII.  *See Cayemittes v. City of N.Y. Dep't of Hous. Pres. and Dev.*, 641 F. App'x 60, 61–62 (2d Cir. 2016); *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012) (noting that "Title VII does not impose liability on individuals" (citations omitted)); *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010); *Mandell v. Cty. of Suffolk,* 316 F.3d 368, 377 (2d Cir. 2003); *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995), *abrogated on other grounds by Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998).  Therefore, the Court dismisses Plaintiff's claims against the Individual Defendants.

#### 2.  Time-barred Title VII claims

In her form Complaint, Plaintiff indicates that the alleged discrimination began in October of 2009 upon her transfer to the 69th precinct and also alleges discrimination from May to June of 2014 and January to July of 2016 as well as February of 2015.  (Compl. 4–5.)

Prior to filing a Title VII claim in a New York federal court, "[a] Title VII plaintiff must file a charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred."  *Staten v. City of New York*, --- F. App'x ---, ---, 2016 WL 3569906, at *1 (2d Cir. June 30, 2016) (citing 42 U.S.C. § 2000e-5(e)(1)); *Sanderson v. N.Y. State Elec. & Gas Corp.*, 560 F. App'x 88, 90 (2d Cir. 2014) (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996)); *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004) ("A plaintiff may bring a claim under Title VII only for acts of discrimination that occurred within the statutory period set by 42 U.S.C. § 2000e–5(e)(1).").  This 300–day time

period acts as a statute of limitations. *Vega*, 801 F.3d at 78–79; *Patterson*, 375 F.3d at 220. The statute of limitations may be extended under the continuing violation exception or because of equitable tolling. *See Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 157 (2d Cir. 2012) ("Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." (*quoting Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993))); *Grys v. ERIndustrial Sales, Inc.*, 553 F. App'x 61, 62 (2d Cir. 2014) ("Equitable tolling is appropriate where the plaintiff: (1) actively pursued judicial remedies but filed a defective pleading during the specified time period; (2) was unaware of his or her cause of action due to misleading conduct of the defendant; or (3) suffered from a medical condition or mental impairment [that] prevented her from proceeding in a timely fashion." (internal quotation marks omitted) (quoting *Zerilli–Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003))).

Here, Plaintiff alleges, to the best of her recollection, that she filed her EEOC Charge in January of 2016. (Compl. 6.) Allowing Plaintiff the most liberal statute of limitations period, the Court construes the EEOC Charge as filed on January 1, 2016, making March 7, 2015, the earliest date Plaintiff could allege conduct violating Title VII. *See Staten*, 2016 WL 3569906, at *1. As a result, Plaintiff's claims based on acts occurring prior to March 7, 2015, are time-barred. Plaintiff's pre-March 7, 2015 claims do not fall under either the continuous violation or the equitable tolling exceptions to the statutes of limitations as all of Plaintiff's undated claims are discrete acts, and Plaintiff has failed to allege that she was not aware of her available cause of action at the time the actions occurred or was otherwise prevented from bringing a timely action.

*See Chin*, 685 F.3d at 157 ("Discrete acts [such as termination, failure to promote, denial of transfer, or refusal to hire], which fall outside the limitations period, cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period."); *Grys*, 553 F. App'x at 62.

Because Plaintiff fails to indicate which of the alleged discriminatory acts occurred during her transfer to the 69th precinct in October of 2009, from May to June of 2014 and February of 2015, and because Plaintiff does not provide dates for each allegation in the Complaint, the Court will afford the Complaint a liberal reading and consider all of the alleged discriminatory acts on the merits.

### 3. Failure to exhaust Title VII claims

Plaintiff alleges that she filed her EEOC Charge in January of 2016. (Compl. 6.) Under Title VII, a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a notice of right-to-sue. *Hewitt v. N.Y.C. Dep't of Health & Mental Hygiene*, 535 F. App'x 44, 45 (2d Cir. 2013) (affirming district court finding that plaintiff "failed to administratively exhaust her Title VII retaliation claim by failing to include that claim in her administrative complaint"); *see also Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 274 F.3d 683, 686 (2d Cir. 2001) ("Exhaustion of administrative remedies through the EEOC is 'an essential element' of the Title VII statutory scheme and, as such, a precondition to bringing such claims in federal court.") However, "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency." *Legnani*, 274 F.3d at 686 (quoting *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 614 (2d Cir. 1999)). "Reasonably related" claims are recognized in three situations: (1) the alleged discriminatory conduct "would fall within the 'scope of the EEOC

investigation which can reasonably be expected to grow out of the charge of discrimination';" (2) the claim is one of "retaliation by an employer against an employee for filing an EEOC charge;" and (3) the plaintiff "alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003) (quoting *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402–03 (2d Cir. 1993), *superseded by statute on other grounds*, Civ. Rights Act of 1991, Pub. L. No. 102–166, 105 Stat. 1071, *as recognized in*, *Carter v. New Venture Gear, Inc*., 310 F. App'x 454 (2d Cir. 2009)). Courts look at "factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving" to determine whether the claims are reasonably related. *Littlejohn*, 795 F.3d at 322 (quoting *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003)); *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 158 (2d Cir. 2008); *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 386 (2d Cir. 2015) (vacating dismissal and remanding to the district court to determine whether futility excused exhaustion and noting that because of the "close resemblance" of the claims to those presented in the EEOC charge, the "reasonably related" exception may apply).

Here, because Plaintiff filed her EEOC Charge sometime in January of 2016 and in the Complaint alleges discriminatory and retaliatory conduct occurring after that date, specifically January through July of 2016, (Compl. 4), it would have been impossible for Plaintiff to include the discriminatory acts occurring after January of 2016 in her EEOC Charge. The Court is unable to determine whether the post-January 2016 *discrimination* claims are saved by the "reasonably related" exception, as Plaintiff has not attached the EEOC Charge to the Complaint and the notice of right-to-sue from the EEOC contains no details of the charge Plaintiff

submitted to the EEOC.[12]  *See Ximines*, 516 F.3d at 158 ("The central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases.'" (quoting *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003))).  On the other hand, Plaintiff's *retaliation* claims likely fall within the exception to exhaustion for retaliation claims arising from the filing of a complaint; in Plaintiff's case her 2007 lawsuit.  *See Fowlkes*, 790 F.3d at 387 (remanding and noting that a retaliation claim for "having previously sued defendants" may be sufficient to fall within the exception to the exhaustion requirement).  Therefore, although the Court cannot determine whether Plaintiff has exhausted her post-January 2016 *discrimination* claims and even though Plaintiff likely has exhausted her post-January 2016 *retaliation* claims, the Court will nevertheless address all of Plaintiff's claims on the merits.

### 4.  Discrimination claim against the NYPD

Plaintiff alleges that the NYPD discriminated against her on the basis of her race, color and national origin in violation of Title VII.  (Compl. 5.)  A plaintiff asserting a Title VII discrimination claim must allege facts showing that "(1) the employer took adverse action against [her] and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision," which can be shown "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination."  *Vega*, 801 F.3d at 86–87.  In other words, "absent direct evidence of discrimination," to survive a motion to dismiss a claim of employment discrimination in violation of Title VII, a plaintiff must plausibly allege facts that would support a finding that she

---

[12]  The Court construes Plaintiff's allegation that she filed the EEOC Charge in January of 2016 as an allegation that the charge included each claim Plaintiff asserts in the Complaint that occurred prior to January of 2016, despite Plaintiff's failure to explicitly allege such or attach her EEOC Charge to the Complaint.  (Compl. 6.)

suffered an adverse employment action and "has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311; *Dechberry v. N.Y.C. Fire Dep't*, 124 F. Supp. 3d 131, 149–150 (E.D.N.Y. 2015).

## A. Protected group

Plaintiff does not identify her race, color and national origin. (Compl. 5.) A plaintiff's failure to allege her race, color or national origin fails to state a Title VII claim. *See Vega*, 801 F.3d at 86–87; *see also Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 227 (S.D.N.Y. 2010) (dismissing *pro se* complaint for failure to state a claim where plaintiff failed to identify her race or religion); *Evans v. Golub Corp.*, No. 96-CV-3889, 1997 WL 349952, at *2 (S.D.N.Y. June 24, 1997) (dismissing Title VII claims where plaintiff "checked off boxes on the form complaint for both race and color discrimination," but "failed to explain how those categories were applicable, and [plaintiff] did not even identify his race and color"). Plaintiff's failure to indicate her race, color and national origin is fatal to her claim because she has not shown that she falls within a protected group.

## B. Adverse employment action

Assuming that Plaintiff can show that she is a member of a protected class, Plaintiff's claim must nevertheless be dismissed because she has not shown that she suffered an adverse employment action. Plaintiff alleges that the NYPD (1) issued "meet[s] standards" evaluations and one disciplinary report, (Compl. 10, 13); (2) denied her certain "open positions," (*id*. at 5, 10); (3) altered her work schedule and unfairly assigned her work, (*id*. at 11, 13–14); and (4) allowed "insight[ment] [sic]" of an "unnecessary argument" with regard to a dispute over a radio and interfered with Plaintiff's use of an office desk fan, (*id*. at 12–15).

An "adverse employment action" means "a materially adverse change in the terms and

conditions of employment" and includes, among other things, termination, demotion or a failure to promote. *See Robinson v. Dibble*, 613 F. App'x 9, 12 (2d Cir. 2015) (noting that the plaintiff's termination constituted "adverse employment action"); *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) ("To be materially adverse, a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" An adverse employment action includes "'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003))). The Court considers each conduct identified by Plaintiff as an adverse action.

### (1)   Evaluations and disciplinary report

Plaintiff alleges that the NYPD discriminated against her by (1) issuing "meet[s] standards" evaluations even though she "trained most of the civilians who arrived at the 69th precinct" and (2) issuing a "Command Discipline" which stated that Plaintiff "failed to submit a complaint report." (Compl. 10, 13.)

Disciplinary evaluations are adverse employment actions if they affect an employee's terms and conditions of employment, such as promotion, wages, or termination. *Farina v. Branford Bd. of Educ.*, 458 F. App'x 13, 17 (2d Cir. 2011) (holding, in the context of an ADA claim, that "[w]hile negative employment evaluation letters, or reprimands may be considered adverse employment actions, here there was no proof that this evaluation had any effect on the terms and conditions of [plaintiff's] employment" (citations and internal quotation marks omitted)); *Eldridge v. Rochester City Sch. Dist.*, 968 F. Supp. 2d 546, 557 (W.D.N.Y. 2013) (quoting *Regis v. Metro. Jewish Geriatric Ctr.*, No. 97-CV-0906, 2000 WL 264336, at *8 (E.D.N.Y. Jan. 11, 2000)); *see also Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 86

(2d Cir. 2001) (finding "notice of discipline" and "counseling memo" insufficient to constitute adverse action when the plaintiff did "not describe its effect or ramifications, how or why the effect would be serious, [or] whether it went to any file"), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 407 (S.D.N.Y. Mar. 10, 2014) ("[T]he threat of disciplinary action, without more, does not constitute an adverse employment action." (first citing *Honey v. Cty. of Rockland*, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002); and then citing *Bowles v. N.Y.C. Transit Auth.*, No. 00-CV-4213, 2006 WL 1418602, at *10 (S.D.N.Y. May 23, 2006), *aff'd*, 285 F. App'x 812 (2d Cir. 2008))).

Here, Plaintiff's allegations regarding her "meet[s] standards" evaluations and the command discipline do not state whether the NYPD diminished Plaintiff's benefits or her responsibilities or treated Plaintiff differently from other similarly situated employees. Thus, Plaintiff's allegations do not rise to the level of an adverse employment action. *Eldridge*, 968 F. Supp. 2d at 557.

### (2)    Denial of "open positions"

Plaintiff alleges that she was unfairly denied certain "open positions" for which she qualified, namely, positions in the domestic violence office and the administration office. (Compl. 5, 10.)

"It is well-established that a failure to promote is an adverse employment action." *Levitant v. City of N.Y. Human Res. Admin.*, 558 F. App'x 26, 29 (2d Cir. 2014) (citing *Tregelia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002)). However, denial of a transfer or a position is not synonymous with failure to promote. *See Preston v. Bristol Hosp.*, 645 F. App'x 17, 19 (2d Cir. 2016) (denying Title VII employment discrimination claim based on failure to

deny a position on a certain team when the change was "not a promotion or new position" and "the role did not warrant any additional compensation"); *Dillon v. Morano*, 497 F.3d 247, 254–55 (2d Cir. 2007) (failing to find a transfer to another unit an adverse employment action where the plaintiff "presented no evidence aside from his own personal opinion that [another unit] is the 'least desirable . . . .'" (citation omitted)); *Moore v. Metro. Transp. Auth.*, 999 F. Supp. 2d 482, 497 (S.D.N.Y. 2013) (holding that a transfer denial is adverse when "the sought for position is materially more advantageous than the employee's current position, whether because of prestige, modernity, training opportunity, job security, or some other objective indicator of desirability." (quoting *Beyer v. Cty. of Nassau*, 524 F.3d 160, 165 (2d Cir. 2008))).

Here, Plaintiff fails to allege that either of the two positions she was refused — the domestic violence office position or the administration office position — were promotions or roles that offered objectively preferred benefits or other indications of desirability. Plaintiff states only that the domestic violence office position "was given to PAA Huang, Xiao, Hong [who] was unable to complete her task in that office and was later removed from domestic violence" and that she was "offered" the administration office position but was denied the position "without reason." (Compl. 10.) Plaintiff makes no claim as to how the open positions compared to her position at the time she was denied each position. Plaintiff therefore fails to allege an adverse employment action. *See Dillon*, 497 F.3d at 254–55; *Sanders*, 361 F.3d at 755.

### (3) Schedule change and unfair work assignments

Plaintiff alleges that she was discriminated against because (1) her work schedule was altered and (2) she was unfairly assigned a heavier workload than other police administrate aides. (Compl. 11, 13–14.)

A change in schedule, without more, is not an adverse employment action for purposes of

a discrimination claim.  *See Seale v. Madison Cty.*, 929 F. Supp. 2d 51, 75 (N.D.N.Y. 2013) (collecting cases); *Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) ("[R]eceiving unfavorable schedules or work assignments do[es] not rise to the level of adverse employment actions because they do not have a material impact on the terms and conditions of [the] [p]laintiff's employment." (citation omitted)).

Likewise, a claim of unfair work assignments does not rise to the level of an adverse employment action unless there is a showing that the assignments resulted in a "material detriment to the employee's working conditions" and not just a "mere inconvenience."  *Ward v. Shaddock*, No. 14-CV-7660, 2016 WL 4371752, at *5 (S.D.N.Y. Aug. 11, 2016) (citing *Feingold v. New York*, 366 F.3d 138, 152–53 (2d Cir. 2004) and *Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 406 (S.D.N.Y. 2014)); *see also Hubbard v. Port Auth. Of N.Y. and N.J.*, No. 5-CV-4396, 2008 WL 464694, at *11 (S.D.N.Y. Feb. 20, 2008) ("Plaintiffs' allegations of excessive or unfair work assignments, without more, do not amount to adverse employment actions because they are not materially adverse changes in the terms or conditions of their employment." (citations and internal quotations marks omitted)).

However, a "disproportionately heavy workload" may be sufficient to establish a materially adverse employment action.  *Feingold*, 366 F.3d at 152–53 (holding on a motion for summary judgment that a plaintiff established that he faced an adverse employment action where he was "assigned a heavier docket of cases as a result of discriminatory intent," cases were "regularly reshuffled" to white administrative law judges, and the employer's stated reason for the assigning scheme was contradicted by the employer's policy); *see, e.g.*, *Johnson v. Long Island Univ.*, 58 F. Supp. 3d 211, 223–24 (E.D.N.Y. 2014) (finding the plaintiff sufficiently pled the adverse employment action on account of his race and gender where he was assigned seven

weeks of "duty" while other similarly situated employees were only given two weeks).

Here, addressing Plaintiff's allegations about scheduling, she alleges that Goodman "was aware of [Plaintiff's] hardship" as the "caretaker for [her] parent who suffers from Altzheimer's," but Goodman nevertheless "changed [Plaintiff's] schedule . . . from 4x12 to 6:30 a.m. to 2:00 p.m." in order "to resolve a[n] issue between [police administrative aide] Monique Morgan and [Plaintiff]." (Compl. 11.) Plaintiff fails to allege how the schedule change had a material impact on the "terms and conditions" of her employment and admits the change in schedule was made to resolve an "issue." (*Id.*) These allegations do not rise to the level of an adverse employment action because Plaintiff fails to allege how the change affected her work conditions. Rather, the facts in the Complaint suggest a neutral motivation for the change in schedule, which was to resolve the "issue" between Plaintiff and Morgan. *Seale*, 929 F. Supp. 2d at 75 ("The inconvenience caused by a change in work location and hours, without an accompanying allegation that such changes amounted to a demotion, is not enough to meet the definition of an adverse action for purposes of a discrimination claim.").

Similarly, as to Plaintiff's claim that she was treated unfairly with regard to work assignments, Plaintiff fails to allege that she suffered a disproportionately heavy workload. Plaintiff alleges only two instances where work was unfairly assigned to her, including on the first occasion when, despite Goodman's awareness of Morgan's "work ethics," Goodman allowed "the newly hired [Morgan] to continue to socialize around the command leaving the work load on [Plaintiff,]" (Compl. 11), and on another occasion she was asked to do "work that [could] be handled often by the next tour of PAA's," (*id*. at 14). Unlike the plaintiff in *Feingold*, Plaintiff does not provide any allegations that the heavier workload was a regular occurrence outside of the two incidents, that it had a materially adverse effect on her work environment or

that it was the result of discriminatory intent. *Cf. Feingold*, 366 F.3d at 152–53; *Pothen v. Stony Brook Univ.*, --- F. Supp. 3d ---, ---, 2016 WL 5716842, at *2, 6 (E.D.N.Y. Sept. 30, 2016) (finding that the plaintiff pled an adverse employment action by alleging that because of his Indian descent and Christian religion, he "was at times not provided with a utility assistant, requiring him to do the work of engineer 1 and assistant at the same time, and was asked to clean paint [sic]" even though the same was not expected of other engineers (internal quotations and citations omitted)). Plaintiff even alleges that part of the reason for her disproportionate assignment was discrimination "towards [Plaintiff] and [her] coworker who worked day tours," (Compl. 14), thereby assigning a benign motivation to the unfair scheduling since Plaintiff does not further allege that she and her coworker were part of the same protected class. Indeed, the heart of Plaintiff's allegation is that other police administrative aides should have been given the work that she was assigned and that her supervisors failed to manage the poor work ethic of her associates, which is further evidence that the work is appropriate for someone of her title and not adverse. *See Ward*, 2016 WL 4371752, at *5–6; *Grant v. N.Y. State Office for People with Develop. Disabilities*, No. 12-CV-4729, 2013 WL 3973168, at *7 (E.D.N.Y. July 30, 2013) (dismissing Title VII discrimination claim for failure to establish an adverse employment action because the assignments complained of by the plaintiff were within the duties someone of the plaintiff's title was "expected to perform," and there was no claim that "such work assignments negatively affected his pay, hours or position"). Plaintiff fails to allege that the two occasions she recounts rose to the level of an adverse employment action.

### (4)   Other discriminating and harassing conduct

Plaintiff alleges that the NYPD discriminated against her by allowing incitement of an "unnecessary argument" pertaining to a dispute over a radio and by allowing the confiscation of

"a desk fan from the front desk [Plaintiff] was assigned to."  (Compl. 12–15.)

Conduct that is a "mere inconvenience" does not rise to the level of a materially adverse employment action.  *Sanders*, 361 F.3d at 755; *see also Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 435 (E.D.N.Y. 2015) ("[T]he allegations regarding the [denial of] "post-its" and the office shift, even if true, do not rise above a level of "mere inconvenience" for purposes of an ADA claim); *Smalls*, 396 F. Supp. 2d at 371 ("[B]eing yelled at [and] receiving unfair criticism . . . do not rise to the level of adverse employment actions because they do not have a material impact on the terms and conditions of [the] [p]laintiff's employment). Plaintiff fails to allege facts showing that these office disputes resulted in a materially adverse employment action, as neither incidence rises above a "mere inconvenience." *See Sanders*, 361 F.3d at 755.

## C.    Inference of discrimination

Moreover, Plaintiff fails to allege any facts to support her claim that the purported adverse actions were discriminatory based on her race, color or national origin.  In the absence of direct evidence of a decision maker's discriminatory intent, courts focus on whether a plaintiff's allegations support a "plausible inference of discrimination."  *See Frederick v. United Bhd. of Carpenters*, --- F. App'x ---, ---, 2016 WL 6518812, at *2 (2d Cir. Nov. 3, 2016) (quoting *Vega*, 801 F.3d at 87).  Whether facts give rise to a plausible inference of discrimination "is a 'flexible [standard] that can be satisfied differently in differing factual scenarios.'"  *Howard v. MTA Metro-N. Commuter R.R.*, 866 F. Supp. 2d 196, 204 (S.D.N.Y. 2011) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996)); *see also Moore v. Kingsbrook Jewish Med. Ctr.*, No. 11-CV-3625, 2013 WL 3968748, at *6 (E.D.N.Y. July 30, 2013) (setting forth the same standard and discussing circumstances from which an inference of discrimination can be

drawn).

> [A]n inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.

*Frederick*, 2016 WL 6518812, at *2 (quoting *Littlejohn*, 795 F.3d at 312).  Remarks made by coworkers may also be probative of discriminatory intent, depending on the particular circumstances under which the comments were made.  *See Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010) (outlining four factors district courts in this Circuit routinely consider in evaluating the probative value of such remarks, including (1) the identity and position of the individual making the remark, (2) the timing of the remark in relation to the employment decision, (3) the content of the remark, and (4) the context in which it was made); *Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 438 (S.D.N.Y. 2015) ("Remarks may raise an inference of discrimination if there is a nexus between the remarks and an adverse employment decision." (citing *Zhang v. Barr Labs., Inc.*, No. 98-CV-5717, 2000 WL 565185, at *4 (S.D.N.Y. May 8, 2000))).

Here, even if Plaintiff had alleged an adverse action, Plaintiff's claim would nevertheless fail because Plaintiff fails to allege facts sufficient to support a plausible inference of discrimination on the basis of race, color or national origin.  As a threshold matter, Plaintiff does not identify her race, color, or national origin.  In addition, Plaintiff does not make any reference to how her race, color or national origin contributed to her alleged mistreatment or that there were any statements by NYPD employees mentioning Plaintiff's race, color or national origin. *See Frederick*, 2016 WL 6518812, at *2 (affirming dismissal of Title VII discrimination claim

because the plaintiff alleged no facts suggesting she was denied promotion for reasons relating to her race and adding that Title VII does not protect against "favoritism, nepotism, or cronyism, so long as it is not premised on animus against a protected class" (quoting *Village of Freeport v. Barrella*, 814 F.3d 594, 613 (2d Cir. 2016))); *see also Khaleel v. Swissport USA, Inc.*, No. 15-CV-4880, 2015 WL 5307733, at *2 (E.D.N.Y. Sept. 10, 2015) (dismissing discrimination claim pursuant to Title VII because "[e]ven under the most liberal interpretation of [the plaintiff's] complaint, he provides no facts that could possibly connect or link any adverse employment action to a protected status"); *Haynes v. Capital One Bank*, No. 14-CV-6551, 2015 WL 2213726, at *2 (E.D.N.Y. May 8, 2015) (dismissing the plaintiff's discrimination claim pursuant to Title VII because, aside from alleging a single "ambiguous remark made by [the plaintiff's] branch manager, in which [the manager] stated that 'this is why I don't hire her kind,'" the plaintiff failed to allege her race or "facts that suggest her termination or any other adverse employment actions were connected to her race"); *Cabey v. Atria Senior Living*, No. 13-CV-3612, 2014 WL 794279, at *2 (E.D.N.Y. Feb. 26, 2014) (dismissing Title VII discrimination claim *sua sponte* where, although complaint described various disagreements between the plaintiff and his co-workers, none of the disagreements were alleged to have concerned the plaintiff's protected status).

Plaintiff's race, color and national origin discrimination claim against the NYPD under Title VII is therefore dismissed without prejudice. Should Plaintiff wish to pursue this claim, she is directed to file an amended complaint with sufficient facts to demonstrate an adverse employment action by the City of New York and to support a plausible inference that her race, color or national origin were a motivating factor in that adverse action.

### 5. Retaliation claim against the NYPD

Plaintiff asserts a Title VII retaliation claim against the NYPD because the "ongoing harassment, retaliation and discrimination is a vicious cycle that stems from the first law suit attempted by me against this department in 2007." (Compl. 15.)

Title VII bars retaliation by an employer against an employee because the employee "has opposed any practice [that is] made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-(3)(a). Retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *See Littlejohn*, 795 F.3d at 315. To establish a prima facie case of retaliation, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Id*. at 316 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).

As with other claims analyzed under the *McDonnell Douglas* framework, at the pleadings stage the allegations need only give "plausible support to the reduced prima facie requirements." *Id.* "Thus, for a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) [the] defendants discriminated — or took an adverse employment action — against [her], (2) 'because' [s]he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90. To sufficiently allege that a defendant-employer took an adverse employment action "because" a plaintiff opposed an unlawful employment practice, a plaintiff "must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Id.* In the retaliation context, but-for causation does not require that retaliation "was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 91 (quoting *Zann Kwan v.*

*Andalex Grp., LLC*, 737 F.3d 834, 846 (2d Cir. 2013)).

## A. Protected activity and defendant's knowledge

Plaintiff alleges she was discriminated against in retaliation for filing a lawsuit in 2007

and that the NYPD was aware of the lawsuit. (Compl. 15.) Filing a formal or informal

complaint challenging discrimination is considered a protected activity for purposes of retaliation

claims under Title VII. *See Dhar v. City of New York*, --- F. App'x ---, ---, 2016 WL 3889108,

at *2 (2d Cir. July 15, 2016) (affirming that filing a complaint in federal court is a protected

activity); *Summa v. Hofstra Univ.*, 708 F.3d 115, 125–26 (2d Cir. 2013) (holding that Plaintiff's

written complaints as well as records of her complaints to an officer of the employer were

protected activities and explaining that only "general corporate knowledge that the plaintiff has

engaged in a protect activity" is necessary (quoting *Gordon v. N.Y.C. Bd. Of Educ.*, 232 F.3d

111, 116 (2d Cir. 2000))). "A complaint of discrimination constitutes 'protected activity' only if

(1) the plaintiff holds a good-faith belief that he suffered discrimination because of a protected

characteristic and (2) that belief is reasonable." *Jagmohan v. Long Island R.R. Co.*, 622 F.

App'x 61, 63–64 (2d Cir. 2015) (citing *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136

F.3d 276, 292 (2d Cir. 1998)). Here, Plaintiff participated in a protected activity when she filed

her Title VII lawsuit in 2007 and the NYPD had at least general knowledge of the lawsuit as they

successfully defended against it.[13] *See Dhar*, 2016 WL 3889108, at *2.

## B. Adverse employment action

Plaintiff alleges that she was retaliated against by the same purported adverse actions

discussed above as the basis for Plaintiff's Title VII discrimination claim. In the retaliation

---

[13] The Court notes that Plaintiff also engaged in a protected activity when she filed her
EEOC Charge but Plaintiff does not allege retaliation for filing her EEOC Charge.

context, as opposed to the discrimination context, an adverse employment action is one that a reasonable employee would find materially adverse, meaning it "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)); *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) (same). The scope of actions that may be materially adverse is broader for purposes of retaliation claims than for discrimination claims. *See Hicks*, 593 F.3d at 165 (citing *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 67).

In evaluating whether an action is materially adverse, "'[c]ontext matters,' as some actions may take on more or less significance depending on the context." *Tepperwien v. Entergy Nuclear Ops., Inc.*, 663 F.3d 556, 568 (2d Cir. 2011) (citation omitted); *see also Hicks*, 593 F.3d at 165 (noting that even minor acts that would be immaterial in some situations may be material in others). Title VII does "not set forth a general civility code for the American workplace." *Hicks*, 593 F.3d at 165 (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 57) (internal quotation marks omitted); *see also Forest v. N.Y. State Office of Mental Health*, --- F. App'x ---, ---, 2016 WL 6917228, at *2 (2d Cir. Nov. 23, 2016) ("'petty slights or minor annoyances that often take place at work and that all employees experience' — are not materially adverse." (quoting *Tepperwien*, 663 F.3d at 568)). To be actionable, "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 57. However, "the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently substantial in gross as to be actionable." *Hicks*, 593 F.3d at 165 (internal quotation marks omitted); *see also Vogel v. CA,*

*Inc.*, --- F. App'x ---, ---, 2016 WL 6242916, at *2 (2d Cir. Oct. 25, 2016).  Those retaliatory acts

may include "unchecked retaliatory co-worker harassment, if sufficiently severe."  *Rivera v.

Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 26–27 (2d Cir. 2012) (citation omitted).

Here, Plaintiff may sufficiently state a claim for adverse employment action as to some of

her claims, *see Vega*, 801 F.3d at 92 ("[A] poor performance evaluation could very well deter a

reasonable worker from complaining,") and not others, *see Mills v. S. Conn. State Univ.*, 519 F.

App'x 73, 76 (2d Cir. 2013) (affirming the district court's dismissal of a retaliation claim

alleging an employer's refusal to accommodate a scheduling request).  However, the Court need

not determine whether any of Defendants' acts, individually or in the aggregate, constitute

adverse employment actions because, as explained below, Plaintiff has not shown a causal

connection between the filing of the 2007 lawsuit and the adverse employment actions.  Thus,

for the reasons discussed below, the Court dismisses Plaintiff's retaliation claim for lack of

causation and does not reach the question of whether Plaintiff alleged an adverse employment

action for her retaliation claim.  *See Altieri v. Albany Public Library*, 172 F. App'x 331, 333–34

(2d Cir. 2006) (affirming district court dismissal of Title VII retaliation claim on causation

grounds alone without reaching whether the alleged employment action was adverse "where the

complaint shows that the first alleged act of retaliation occurred twenty-one months after the

plaintiff's protected activity, and where nothing in the plaintiff's pleadings, even liberally

construed, suggest a plausible scenario of a causal connection between two events occurring so

far apart").

## C.    Causal connection

Plaintiff alleges that Defendants retaliated against her because she filed a lawsuit against

the NYPD in 2007.  (Compl. 15.)  A plaintiff may show a causal connection between her

protected activity and the adverse employment action either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn*, 795 F.3d at 319 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)); *see also Vega*, 801 F.3d at 90 ("A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." (first citing *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001); and then citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010))); *Chung v. City Univ. of N.Y.*, 605 F. App'x 20, 23 (2d Cir. 2015) ("Ordinarily, causation may be inferred from close temporal proximity."). There is no bright-line rule concerning the temporal proximity required to support a causal inference. *See Gorzynski*, 596 F.3d at 110–11 ("Though [the Second Circuit] has not drawn a bright line defining, for the purposes of a *prima facie* case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, [it has] previously held that five months is not too long to find the causal relationship."); *Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 457 (E.D.N.Y. 2011). However, there are outer limits to temporal proximity. *See Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016) ("This gap of some sixteen months is too long to support a retaliation claim based solely on temporal connection."); *Dhar*, 2016 WL 3889108, at *2 (finding no temporal causation where complaint filed in 2010 and retaliation allegedly occurred in 2014); *Nicastro v. N.Y.C. Dep't of Design & Const.*, 125 F. App'x 357, 358 (2d Cir. 2005) (suggesting that ten months was not sufficiently close to "demonstrate a causal nexus"); *Dimitracopoulos v. City of New York,* 26 F. Supp. 3d 200, 217 (E.D.N.Y. 2014) (finding that when the plaintiff failed to allege facts

connecting 2009 lawsuit to actions suffered in 2012, the temporal proximity was "too attenuated" to sustain an inference of retaliation for a Age Discrimination in Employment Act claim).

Here, Plaintiff alleges no direct or circumstantial evidence that the alleged discriminatory actions were taken against her as a result of the 2007 lawsuit or that the lawsuit was a "but-for" cause of Defendants' actions. *See Vega*, 801 F.3d at 90; *cf. Walker v. N.Y.C. Dep't of Corrs.*, No. 01-CV-1116, 2008 WL 4974425, at *26 (S.D.N.Y. Nov. 19, 2008) (finding indirect evidence of causation where similarly situated employee "received far less severe discipline" than plaintiff for "substantially the same conduct"). Nor does Plaintiff allege retaliatory animus. Plaintiff cannot rely on temporal proximity to cure the lack of causal connection because Plaintiff filed the prior lawsuit on December 14, 2007, nearly nine years before Plaintiff's first allegation that is not barred by the statute of limitations, and nearly seven years before her earliest time-barred claim. This does not suffice for temporal proximity. *See Nicastro*, 125 F. App'x at 358.

Accordingly, the Court finds that the Complaint fails to state a claim for discrimination or retaliation under Title VII, and dismisses it pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### III. Conclusion

For the reasons discussed above, the Complaint is dismissed. Plaintiff's Title VII claims against the Individual Defendants are dismissed with prejudice, as Plaintiff cannot sue individuals under Title VII. Plaintiff is granted leave to file an amended complaint against the City of New York pursuant to Title VII and the FMLA, and against the Individual Defendants if Plaintiff believes she has a claim against these Individual Defendants under a provision other than Title VII that allows for individual liability. Any amended complaint must be filed within thirty (30) days of the date of this Memorandum and Order. Plaintiff is advised that if she files an amended complaint, it will completely replace the original Complaint. The amended

complaint must be captioned "Amended Complaint" and bear the same docket number as this

Memorandum and Order. If Plaintiff fails to amend the Complaint within thirty days as directed

by this Memorandum and Order, the Court shall dismiss this Complaint for failure to state a

claim on which relief may be granted. If submitted, the amended complaint will be reviewed for

compliance with this Memorandum and Order and for sufficiency under 28 U.S.C.

§ 1915(e)(2)(B).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this

Memorandum and Order would not be taken in good faith and *in forma pauperis* status is

therefore denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438,

444–45 (1962).

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: December 9, 2016
        Brooklyn, New York