UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

MONICA ARROYO-HORNE,

                Plaintiff,                    **MEMORANDUM & ORDER**
                                                                     16-CV-3857 (MKB)

                v.

THE CITY OF NEW YORK,

                Defendant.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Monica Arroyo-Horne, proceeding *pro se*, commenced the above-captioned action on July 7, 2016. (Compl., Docket Entry No. 1.) Plaintiff filed a Second Amended Complaint ("SAC") on November 19, 2018, asserting claims against Defendant City of New York for conspiracy in violation of 42 U.S.C. § 1985(3), First Amendment retaliation, municipal liability pursuant to 42 U.S.C. § 1983, and discrimination and retaliation in violation of 42 U.S.C. § 1981, New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), and New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"). (SAC ¶ 24, Docket Entry No. 36.) Currently before the Court is Defendant's motion to dismiss the SAC. (Def. Mot. to Dismiss ("Def. Mot."), Docket Entry No. 44; Mem. in Supp. of Def. Mot. ("Def. Mem."), Docket Entry No. 46.) For the reasons set forth below, the Court grants Defendant's motion.

### I. Background

#### a. Factual background

      The Court assumes familiarity with the facts as detailed in its prior Memoranda and Orders and provides only a summary of the allegations in the SAC. *See Arroyo-Horne v. N.Y.C.*

*Police Dep't*, No. 16-CV-3857, 2016 WL 8711061 (E.D.N.Y. Dec. 9, 2016) ("*Arroyo-Horne I*"); *Arroyo-Horne v. City of New York*, No. 16-CV-3857, 2018 WL 4259866 (E.D.N.Y. Sept. 5, 2018) ("*Arroyo-Horne II*").[1]

Since March 13, 2000, Plaintiff has been employed by the New York Police Department ("NYPD") as a Police Administrative Aide ("PAA"). (SAC ¶ 7.) Plaintiff works at the 69th Precinct in Brooklyn, New York, and Principal Administrative Aide ("PRAA") Samantha Benton supervises Plaintiff. (*Id.* ¶¶ 12–21; *see also* Cease and Desist Letter, annexed to Pl. Aff. in Opp'n to Def. Mot. ("Pl. Aff.") as Ex. 2, Docket Entry No. 42-2.)

### i. Benton's alleged discriminatory and harassing conduct

On July 9, 2018, Benton "yelled out in front of other supervisors" that Plaintiff "is not allowed to do overtime," even though other employees with the same title as Plaintiff are permitted to do so. (SAC ¶ 12.)

On or about July 19, 2018, Benton "yelled" at Plaintiff "in a disparaging manner," asking if she had instructed the custodian to throw away Benton's plants. (*Id.* ¶ 15.)

On July 19, 2018 and July 28, 2018, Benton "harass[ed] [Plaintiff] regarding [her] FMLA leave" by "recruit[ing] another newly assigned supervisor . . . to question [Plaintiff's] FMLA [leave] for [her] mother while PRAA Benton was fully aware of who [Plaintiff's] FMLA [leave] covered." (Pl. Aff. ¶ 5.)

---

[1] The Court assumes the truth of the factual allegations in the SAC for the purposes of this Memorandum and Order. Because Plaintiff is proceeding *pro se*, the Court also considers and assumes the truth of the factual allegations in Plaintiff's papers filed in opposition to Defendant's motion. (*See* Pl. Aff. in Opp'n to Def. Mot. ("Pl. Aff."), Docket Entry No. 42; Pl. Prelim. Stmt. in Opp'n to Def. Mot. ("Pl. Prelim. Stmt."), Docket Entry No. 42-1); *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

2

On or about July 26, 2018, Benton participated in "an unscheduled meeting" with Plaintiff and "Patrick of payroll" regarding Plaintiff's use of FMLA leave to care for her parent," and after the meeting, Benton "began screaming and yelling out loud in her . . . office." (SAC ¶ 16.)

On or about October 9, 2018, Plaintiff was "informed [that] . . . Benton had written a 'CD'" charging Plaintiff with insubordination. (*Id.* ¶ 17.)

On October 29, 2018, Benton entered the room in which Plaintiff was working and "began to count the complaints in the basket for typing" even though "Benton had been instructed by her supervisors to stay away from [Plaintiff]." (*Id.* ¶ 21.)

On or about January 23, 2019, Benton entered the room in which Plaintiff was sitting and "bump[ed] Plaintiff's chair," which had wheels, and "moved [Plaintiff] to the side." (Pl. Aff. ¶ 9.)

On an unspecified date, Benton "brought an overtime slip [to Plaintiff while she] was handling a complaint on the telephone," and "began yelling at [Plaintiff] and standing over her insisting she revise the overtime slips immediately." (SAC ¶ 14.) When Plaintiff responded that she would handle the slip as soon as possible, Benton "stormed out . . . and began banging her fist on the front desk demanding that [Plaintiff] be suspended immediately to the desk supervisor on the grounds that [Plaintiff] did not follow a direct order to revise the overtime slip." (*Id.*)

    ii.    **Plaintiff's NYSDHR and NYPD complaints**

On or about May 25, 2018, Plaintiff "filed a charge of discrimination" with the New York State Division of Human Rights ("NYSDHR") "alleging retaliation based [o]n filing . . . previous complaints" with the NYSHDHR (the "NYSDHR Charge"). (*Id.* ¶ 11.) In the NYSDHR Charge, Plaintiff asserted that an unnamed supervisor "showed favoritism towards

other co-workers . . . includ[ing] new assignments, overtime[,] and flexible schedules." (*Id.*)

On or about July 13, 2018, Plaintiff served the NYPD with a cease and desist letter, stating that Benton's "continuous actions are interfering with [Plaintiff's] daily workflow" (the "Cease and Desist Letter"). (*Id.* ¶ 10.) The Cease and Desist Letter also states, "be advised any retaliation by you and/or department supervisors both civilian and uniform will result in further action(s)," and "[a]ll actions towards [Plaintiff] including (denial of overtime, frivolous lateness, denial of open positions and administrative transfers) will be considered as harassment, retaliation, and discrimination." (*Id.*)

On July 26, 2018, Plaintiff "requested [that] a[n] official police department complaint be filed on [her] behalf." (Pl. Aff. ¶ 5.) Plaintiff "wrote the complaint [herself] and asked a police officer to rewrite it and sign it and submit it to the desk sergeant" (the "July 2018 NYPD Complaint"). (*Id.*) On an unspecified date, Plaintiff inquired about the status of the July 2018 NYPD Complaint, and "was told that it had to be reviewed by the Administrative Lieutenant before submission." (*Id.*) As of February 1, 2019, the complaint had not "surfaced." (*Id.*)

On or about September 17, 2018, Plaintiff "attempted to file an official [complaint] for the harassment within the 69th Precinct" (the "September 2018 NYPD Complaint"). (SAC ¶ 19.)

On September 18, 2018, Plaintiff discussed Benton's harassment with the NYPD's "OEEO office" (the "September 2018 OEEO Complaint"). (*Id.* ¶ 20.) Plaintiff reported that Benton removed a group photograph of a retired sergeant from Plaintiff's bulletin board at Plaintiff's desk without her permission or authority. (*Id.*)

By letter dated January 23, 2019, Plaintiff complained to Captain Anderson and Lieutenant Cheikhali that Benton harassed her (the "January 2019 Letter Complaint"). (Jan.

4

2019 Letter Complaint, annexed to Pl. Aff. as Ex. 2, Docket Entry No. 42-2.) In the January 2019 Letter Complaint, Plaintiff states that Benton "bump[ed] the chair [that Plaintiff] was sitting in with her body." (*Id.*)

   b. **Procedural background**

Plaintiff filed the Complaint on July 7, 2016, against the NYPD and Robin Goodman, Norman Grandstaff, Monique Morgan, Diana Harnach, Dave Holloway, Al Jernigan, and Jean Jason (the "Individual Defendants") asserting claims of discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 52 U.S.C. § 2000e *et seq.* ("Title VII"). (Compl.) Plaintiff alleged that the NYPD and the Individual Defendants unfairly evaluated her and increased her workload, changed her schedule to a less convenient shift, denied her open positions, and committed other harassing conduct. (*Id.* at 5, 10–15.)

Plaintiff filed an Amended Complaint on March 9, 2017, (Am. Compl., Docket Entry No. 13), and a Corrected Amended Complaint on March 10, 2017, asserting claims of racial discrimination, retaliation, and hostile work environment in violation of Title VII, interference and retaliation in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and a claim of municipal liability pursuant to section 1983, (Corrected Am. Compl., Docket Entry No. 14).

By Memorandum and Order dated September 5, 2018, the Court dismissed the Corrected Amended Complaint for failure to state a claim, but granted Plaintiff leave to file a second amended complaint (the "September 2018 Decision"). *Arroyo-Horne II*, 2018 WL 4259866. The Court instructed that:

> Any further amended complaint should include copies of any and all complaints or charges Plaintiff has filed with the EEOC, the NYSDHR, or the NYPD. Plaintiff is also required to specify to the best of her ability the approximate dates on which she made each

5

complaint or charge and the date of the unlawful conduct the complaint or charge alleges. In addition, Plaintiff should include in a second amended complaint an explanation as to how each allegedly adverse employment action taken by Defendant against Plaintiff resulted in a materially adverse change in the terms and conditions of her employment. As to her discrimination claim, Plaintiff should include factual circumstances that Plaintiff believes demonstrate discrimination. As to her allegations that she was treated differently from her co-workers, Plaintiff must specify the race of her co-workers and any facts supporting her claim that they were treated more favorably. With respect to Plaintiff's retaliation claim, Plaintiff's second amended complaint should include information concerning when and how she notified Defendant of any of her protected activities and how those activities caused the adverse employment action. Plaintiff's second amended complaint should also include information concerning Defendant's knowledge of any of Plaintiff's protected activities and how those activities are causally connected to an alleged adverse employment action. An amended FMLA claim must state Plaintiff's eligibility for FMLA leave including the number of hours Plaintiff worked in the twelve-month period preceding her claim.

*Id.* at *23. The Court also advised Plaintiff that a second amended complaint would "completely replace the prior complaints filed in this action," and that "Plaintiff must succinctly state, in the second amended complaint, all of her claims against each of the defendants whom she believes directly violated her rights, and do so in accordance with the instructions [in the September 2018 Decision]." *Id.*

In the SAC, Plaintiff asserts claims against Defendant for conspiracy in violation of section 1985(3), First Amendment retaliation, municipal liability pursuant to section 1983, and discrimination and retaliation in violation of section 1981, NYSHRL, and NYCHRL.[2] (SAC

---

[2] Plaintiff appears to have abandoned her Title VII claims for racial discrimination, retaliation, and hostile work environment, and for interference and retaliation in violation of the FMLA. The Court dismisses these claims for failure to state a claim for the reasons stated in *Arroyo-Horne II*. *See Arroyo-Horne II*, 2018 WL 4259866, at *6–21 (dismissing Plaintiff's Title VII claims); *id.* at *21–22 (dismissing Plaintiff's FMLA claims).
    In addition, Plaintiff raises section 1985(3), First Amendment retaliation, and section 1981 claims for the first time in the SAC. Although "[d]istrict courts in this Circuit have

¶ 24.)

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough

---

routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted," *Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (collecting cases), in view of Plaintiff's *pro se* status, the Court declines to dismiss the claims raised for the first time in the SAC on this basis alone and considers the merits of these claims. *See MacIntyre v. Moore*, 335 F. Supp. 3d 402, 410 (W.D.N.Y. 2018) (explaining that "[t]he [c]ourt did not grant [the plaintiffs] leave to add new claims to their complaint" but declining to dismiss the new claims on that basis "given [the plaintiffs'] *pro se* status"); *Youngblood v. City of New York*, No. 15-CV-3541, 2017 WL 3176002, at *5 (S.D.N.Y. July 24, 2017) (explaining that "[t]he [c]ourt could dismiss [the new claims]" for malicious abuse of process and municipal liability on the grounds that the court "did not grant [p]laintiff leave to replead those claims," but declining to do so "given [the] [p]laintiff's *pro se* status"); *Moriates v. City of New York*, No. 13-CV-4845, 2016 WL 3566656, at *2–3 (E.D.N.Y. June 24, 2016) (considering new claims in the plaintiff's amended complaint, even though they exceeded the scope of leave the court granted plaintiff because "[f]or *pro se* litigants, broad leave to replead is generally appropriate"); *Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*, No. 12-CV-974, 2015 WL 5729969, at *22 (S.D.N.Y. Sept. 30, 2015) (declining to dismiss the plaintiff's new claims where the court "expressly granted [p]laintiff only limited leave . . . [g]iven [the] [p]laintiff's pro se status, and the [c]ourt's obligation to liberally construe pro se pleadings); *cf. Miles v. City of New York*, No. 14-CV-9302, 2018 WL 3708657, at *5 (S.D.N.Y. 2018) (striking portions of the amended complaint that were beyond the scope of leave to amend); *Jun Kong v. Wing Keung Enters., Inc.*, No. 15-CV-6228, 2017 WL 6025281, at *6 (E.D.N.Y. Aug. 9, 2017) (same); *Bravo v. Established Burger One, LLC*, No. 12-CV-9044, 2012 WL 5549495, at *5 (S.D.N.Y. Oct. 8, 2013) (dismissing new claims because they exceeded the court's leave to amend).

7

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").

    b.    **Plaintiff fails to state a claim for conspiracy in violation of section 1985(3) claim**

Plaintiff alleges that "[s]upervisors violated [her] with disparate treatment [and] unlawful retaliation" in violation of section 1985(3). (SAC ¶ 24.)

Defendant argues that Plaintiff's section 1985(3) claim should be dismissed because she does not identify the individuals who allegedly participated in a conspiracy to deprive her of her rights or state that such individuals had a meeting of the minds to engage in conduct prohibited by section 1985(3). (Def. Mem. 16.) In addition, Defendant argues that Plaintiff does not allege that her supervisors were working outside the scope of their employment or for interests unaligned with the NYPD, and therefore her section 1985(3) claim is barred by the intra-corporate conspiracy doctrine. (*Id.*)

To state a claim for conspiracy in violation of section 1985(3), a plaintiff must allege (1) a conspiracy, (2) with the intent or purpose to deprive a person of equal protection of the law, (3)

8

an act in furtherance of the conspiracy, (4) which results in an injury to a person, or a person's property, or the deprivation of a federal constitutional right.  *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015); *Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 341 (2d Cir. 2000).  "In order to maintain an action under [s]ection 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that [the] defendants entered into an agreement, express or tacit, to achieve the unlawful end."  *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (citation and internal quotation marks omitted).  In addition, a plaintiff must allege that she is a member of a protected class and that the conspirators acted with class-based discriminatory motivation.  *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Britt v. Garcia*, 457 F.3d 264, 270 n.4 (2d Cir. 2006); *Ali v. Connick*, 136 F. Supp. 3d 270, 277 (E.D.N.Y. 2015).

Plaintiff fails to state a section 1985(3) claim.  The SAC does not provide any allegations or include any facts from which the Court could conclude that any individual(s) conspired to deprive Plaintiff of equal protection of the laws or equal privileges and immunities under the laws.  *See Dolan*, 794 F.3d at 296 (explaining that to state a claim for a conspiracy under section 1985(3), a plaintiff must allege a conspiracy "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws[]").  Nor has Plaintiff provided any "factual basis supporting a meeting of the minds."  *Webb*, 340 F.3d at 110.  Accordingly, Plaintiff fails to state a claim under section 1985(3).  *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1868 (2017) ("To state a claim under § 1985(3), a plaintiff must first show that the defendants conspired — that is, reached an agreement — with one another."); *see also K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 308 (S.D.N.Y. 2013) (dismissing the plaintiff's section 1985(3) claim because the complaint did not "set forth *any* specific facts that indicate *any* sort of meeting of the

minds . . . let alone an agreement to violate [the plaintiffs' rights]"); *Friends of Falun Gong v. Pacific Cultural Enter., Inc.*, 288 F. Supp. 2d 273, 279 (E.D.N.Y. 2003) (finding that the plaintiff failed to adequately plead a section 1985(3) claim because "the complaint [did] not include any facts that could support an inference of a conspiracy" and because the plaintiff "cite[d] no facts from which a meeting of the minds could be inferred"). The Court therefore dismisses Plaintiff's section 1985(3) claim.

### c. Plaintiff fails to state a First Amendment retaliation claim

Plaintiff alleges that "[s]upervisors violated [her] with . . . retaliation for the exercise of [her] First Amendment right, for the time period beginning May 25, 2018 up to and including October 29, 2018, the date of commencement of this action."[3] (SAC ¶ 24.)

Defendant argues that Plaintiff's First Amendment retaliation claim should be dismissed because, assuming that Plaintiff is alleging that the NYSDHR Charge constitutes protected speech, (1) the NYSDHR Charge did not involve a matter of public concern and therefore does not constitute protected speech; and (2) Plaintiff does not allege a causal connection between the NYSDHR Charge and any adverse employment action. (Def. Mem. 17–20.) Defendant addresses only Plaintiff's NYSDHR Charge.

To state a First Amendment retaliation claim, a plaintiff must establish that: "(1) [her] speech or conduct was protected by the First Amendment; (2) the defendant took adverse action against [her]; and (3) there was a causal connection between this adverse action and the protected speech." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (quoting *Cox v.*

---

[3] The Court is unclear as to the basis for Plaintiff's First Amendment retaliation claim. However, the Court considers whether Plaintiff states a First Amendment retaliation claim based on her filing the NYSDHR Charge, the Cease and Desist Letter, the July 2018 NYPD Complaint, the September 2018 NYPD Complaint, the September 2018 OEEO Complaint, and the January 2019 Letter Complaint.

*Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)); *see also Eyshinskiy v. Kendall*, 692 F. App'x 677, 678 (2d Cir. 2017); *Singh v. City of New York*, 524 F.3d 361, 372 (2d Cir. 2008).

The Supreme Court has instructed courts to conduct a two-step inquiry into whether a public employee's speech is entitled to protection:

> The first [step] requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question [then] becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.

*Lane v. Franks*, 573 U.S. 228, 238 (2014) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

"To constitute speech on a matter of public concern, an employee's expression must 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Montero v. City of Yonkers, N.Y.*, 890 F.3d 386, 399 (2d Cir. 2018) (quoting *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011)). "[S]peech that principally focuses on an issue that is personal in nature and generally related to the speaker's own situation, or that is calculated to redress personal grievances — even if touching on a matter of general purpose — does not qualify for First Amendment protection." *Id.* (alterations, citations, and internal quotation marks omitted); *see also Ruotolo v. City of New York*, 514 F.3d 184, 190 (2d Cir. 2008) ("The heart of the matter" in determining whether an employee's speech addresses a matter of public concern "is whether the employee's speech was calculated to redress personal grievances or whether it had a broader public purpose." (citation and internal quotation marks omitted)).

11

Plaintiff fails to state a First Amendment retaliation claim because each of her complaints addresses personal grievances. The NYSDHR Charge complained of "favoritism towards other co-workers," (SAC ¶ 11), the Cease and Desist Letter stated that Benton's "continuous actions are interfering with [Plaintiff's] daily workflow," (Cease and Desist Letter 1), the September 2018 OEEO Complaint detailed Plaintiff's grievance that Benton removed a group photograph of a retired sergeant from Plaintiff's bulletin board, (SAC ¶ 20), and the January 2019 Complaint Letter complained that Benton "bump[ed]" Plaintiff's chair, (Jan. 2019 Letter Complaint).[4] These complaints are "personal in nature." *Montero*, 890 F.3d at 399. They relate only to Plaintiff's employment and her working relationship with Benton, and there are no facts to indicate that they had any kind of "broader public purpose," *Ruotolo*, 514 F.3d at 190, or that they were related to a "political, social, or other concern to the community," *Montero*, 890 F.3d at 399. *See Sousa v. Roque*, 578 F.3d 164, 174 (2d Cir. 2009) ("[S]peech on a purely private matter, such as an employee's dissatisfaction with the conditions of his employment, does not pertain to a matter of public concern." (citation omitted)); *Ross v. N.Y.C. Dep't of Educ.*, 935 F. Supp. 2d 508, 523 (E.D.N.Y. 2013) (explaining that the plaintiff's complaints were "unquestionably not a matter of public concern" because they "concer[ed] only *his* complaints . . . and retaliatory acts that affected only *his* employment"); *Peterson v. City of Rochester*, No. 06-CV-6003, 2010 WL 1408013, at *12 (W.D.N.Y. Mar. 31, 2010) ("Where there is no suggestion in th[e] record that [the plaintiff] wanted to debate issues of discrimination, that her suit sought relief against pervasive or systemic misconduct by a public agency or public officials, or that her suit was part of an overall effort to correct allegedly unlawful practices or bring them to public

---

[4] Plaintiff does not describe the contents of the July 2018 NYPD Complaint or the September 2018 NYPD Complaint. (Pl. Aff. ¶ 5; SAC ¶ 19.)

12

attention, a public employee's personal complaints about discrimination is not speech on a matter of public concern." (alterations, citation, and internal quotation marks omitted)); *Olsen v. Cty. of Nassau*, No. 05-CV-3628, 2008 WL 4838705, at *5 (E.D.N.Y. Nov. 4, 2008) (explaining that speech on a matter of public concern "does not generally include comments relating to internal personnel disputes and working conditions" (citation and internal quotation marks omitted)). Accordingly, the Court grants Defendant's motion as to Plaintiff's First Amendment retaliation claim and dismisses this claim.

### d. Plaintiff fails to state a municipal liability claim

Plaintiff alleges that Defendant "should be liable for the violation" of section 1983 committed by Benton, because Defendant "fail[ed] to intervene to stop [it]." (SAC ¶ 23.) Plaintiff alleges that Defendant "had a duty to intervene," and "a reasonable opportunity to intervene," but "failed to intervene." (*Id.* ¶ 24.)

Defendant argues that the Court should dismiss Plaintiff's municipal liability claim because she fails to allege any facts showing that any of Benton's alleged actions were taken pursuant to a formal policy or custom. (Def. Mem. 8.)

In order to state a section 1983 claim against a municipal defendant such as the City of New York, a plaintiff must demonstrate that "(1) an official [municipal] policy or custom (2) cause[d] the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (E.D.N.Y. 2018) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *see also Douglas v. City of New York*, 730 F. App'x 12, 18 (2d Cir. 2018) (same). A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and

13

widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates. *See Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13–14 (2d Cir. 2015) (formal policy officially endorsed by the municipality); *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (widespread and persistent practice); *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014) (failure to train amounting to deliberate indifference); *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (policymaking official's "express" or "tacit" ratification of low-level employee's actions).

Plaintiff fails to state a claim for municipal liability under section 1983. Plaintiff states no facts from which the Court could conclude that Defendant had an official policy or custom that caused the deprivation of her constitutional rights. *See Torraco*, 615 F.3d at 140 (explaining that to state a section 1983 claim against a municipal defendant, a plaintiff must demonstrate that an official policy or custom caused the plaintiff to be subjected to a denial of a constitutional right). Instead, Plaintiff makes conclusory assertions about Defendant's "duty to intervene," (SAC ¶ 24), and simply restates the law. (*See, e.g.*, *id.* ¶ 12 ("State law determines whether a particular person or entity is the final policy-making authority."); *id.* ¶ 13 ("[T]he identification of those officials whose decisions represent the official policy of the local government unit is itself a legal question to be resolved by the trial judge before the case is submitted to the jury."). Such allegations are insufficient to support the existence of an official policy or custom.[5] *See*

---

[5] To the extent that Plaintiff seeks to assert a separate claim for failure to intervene, that claim is dismissed because Plaintiff fails to state a constitutional violation. *See Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 566 (S.D.N.Y. 2010) (noting that "[a]n underlying constitutional violation is an essential element of a failure to intercede claim under [section]

14

*Vested Business Brokers, Ltd. v. Cty. of Suffolk*, No. 16-CV-4945, 2017 WL 4122616, at *8 (E.D.N.Y. Sept. 15, 2017) ("[T]hough Section 1983 does not require application of a heightened pleading standard to allege municipal liability, a complaint does not suffice if it tenders naked assertion[s] devoid of further factual enhancement." (citation and internal quotation marks omitted)); *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) ("[T]o survive a motion to dismiss, [a] [p]laintiff cannot merely allege the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." (citation and internal quotation marks omitted)). Accordingly, the Court dismisses Plaintiff's municipal liability claim.

### e. Plaintiff fails to state a section 1981 claim

Plaintiff alleges that "[s]upervisors violated [her] with disparate treatment [and] unlawful retaliation" in violation of section 1981. (SAC ¶ 24.)

Defendant argues that Plaintiff's section 1981 claims should be dismissed because she has not alleged facts showing municipal liability. (Def. Mem. 10 n.5.)

Plaintiff's failure to state a claim for municipal liability is fatal to her discrimination and retaliation claims pursuant to section 1981. *See Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) ("When a defendant sued for discrimination under [section 1981] is a municipality, the plaintiff is required to show that the challenged acts were performed pursuant

---

1983," and dismissing the claim because the plaintiff had not stated a constitutional violation) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 746 F.3d 123, 129 (2d Cir. 1997)); *see also Wieder v. City of New York*, 569 F. App'x 28, 30 (2d Cir. 2014) ("Because the underlying constitutional claims were properly dismissed, we also affirm the district court's dismissal of plaintiff's failure to intervene claim."); *Arbuckle v. City of New York*, No. 14-CV-10248, 2016 WL 5793741, at *14 (S.D.N.Y. Sept. 30, 2016) ("[A] failure to intervene claim is contingent on . . . the underlying claim."); *Levy v. City of New York*, 935 F. Supp. 2d 575, 594 (E.D.N.Y. 2013) ("[T]he failure to intervene claim is contingent upon the disposition of the primary claims underlying [it]." (citation omitted)).

to a municipal policy or custom." (citation and internal quotation marks omitted)); *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004) (explaining that a section 1981 plaintiff must "show that the challenged acts were performed pursuant to a municipal policy or custom," i.e., "that a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law, or that a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials" (citation and internal quotation marks omitted)); *Geras v. Hempstead Union Free Sch. Dist.*, 149 F. Supp. 300, 339 (E.D.N.Y. 2015) ("Under the well-settled authority of *Monell* . . . and its progeny, Section 1981 and Section 1983 claims against a municipality require proof that the charged acts were performed pursuant to a municipal policy or custom" (citation and internal quotation marks omitted)); *Postell v. Rochester City Sch. Dist.*, 136 F. Supp. 3d 492, 498 (W.D.N.Y. 2015) ("The standards for imposition of municipal liability under Section 1983 apply with equal force to claims brought against municipalities under Section 1981."); *Edwards v. Jericho Union Free Sch. Dist.*, 904 F. Supp. 2d 294, 310 (E.D.N.Y. 2012) ("[T]o establish municipal liability for a Section 1981 claim, a plaintiff must meet the standards articulated by *Monell* and its progeny."); *Carmody v. Village of Rockville Ctr.*, 661 F. Supp. 2d 299, 330 (E.D.N.Y. 2009) ("[W]here the defendant [is] alleged to have discriminated or retaliated against an employee under Section[] 1981," the claim is analyzed under "the same standard for prevailing on a claim of municipal liability under Section 1983, also known as a *Monell* claim."). Accordingly, the Court dismisses Plaintiff's section 1981 claim.

### f. The Court declines to exercise supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims

In the SAC, Plaintiff for the first time asserts claims for discrimination and retaliation pursuant to NYSHRL and NYCHRL. Having dismissed Plaintiff's federal claims, the Court

declines to exercise supplemental jurisdiction over Plaintiff's state law claims for discrimination and retaliation pursuant to the NYSHRL and NYCHRL. *See* 28 U.S.C. § 1367(c)(3) ("District courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction."); *see also All. of. Auto. Mfrs., Inc., v. Currey*, 610 F. App'x 10, 14 (2d Cir. 2015) (holding that it was "not improper for the court to decline to exercise its supplemental jurisdiction" after it properly dismissed the plaintiff's federal claims); *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." (alteration in original) (quoting *Castellano v. Bd. of Trs.*, 937 F.3d 752, 758 (2d Cir. 1991))).

### III. Conclusion

For the foregoing reasons, the Court grants Defendant's motion and dismisses Plaintiff's claims for conspiracy in violation of section 1985(3), First Amendment retaliation, municipal liability pursuant to section 1983, and section 1981 discrimination and retaliation. The Court declines to exercise jurisdiction over Plaintiff's NYSHRL and NYCHRL claims and dismisses those claims without prejudice. The Clerk of Court is directed to close this case.

Dated: July 30, 2019
      Brooklyn, New York

                                      SO ORDERED:

                                        s/ MKB
                                    MARGO K. BRODIE
                                    United States District Judge